1
2
3
4
5
6
7
8
9
10

**UNITED STATES DISTRICT COURT**

11

**SOUTHERN DISTRICT OF CALIFORNIA**

12
13

ALLEN THOMAS,

CASE NO. 12cv1188-WQH-WMc

14

Plaintiff,

15

vs.

ORDER

PORTFOLIO RECOVERY
ASSOCIATES LLC,

16
17

Defendant.

18

HAYES, Judge:

19

     The matters before the Court are the Motion for Summary Judgment filed by

20

Plaintiff Allen Thomas (ECF No. 19), and the Motion for Summary Judgment filed by

21

Defendant Portfolio Recovery Associates LLC ("PRA") (ECF No. 21).

22

**I.    Background**

23

     On December 17, 2012, Thomas filed the First Amended Complaint, which is the

24

operative pleading in this action. (ECF No. 16). The First Amended Complaint alleges

25

that PRA filed a complaint in state court against Thomas which violated the Fair Debt

26

Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, *et seq.*, and the Rosenthal Fair

27

Debt Collection Practices Act ("Rosenthal Act"), California Civil Code § 1788, *et seq.*

28

     On July 2, 2013, Thomas filed his Motion for Summary Judgment accompanied

1   by evidence in support of the motion.  (ECF No. 19).  On July 8, 2013, PRA filed its

2   Motion for Summary Judgment accompanied by evidence.  (ECF No. 21).  On July 22,

3   2013, each party filed an opposition to the opposing party's motion.  (ECF Nos. 28, 29).

4   On July 29, 2013, each party filed a reply.  (ECF Nos. 31, 32).

5       After review of the six briefs and evidence submitted by the parties, the Court

6   finds this matter suitable for resolution without oral argument.  *See* S.D. Cal. Civ. L.R.

7   7.1(d)(1).[1]

8   **II.    Facts**

9       Thomas had a credit card account with Bank of America and made charges and

10  took cash advances on the card.  (Thomas Dep. at 24, 28; ECF No. 7).  Bank of America

11  sent monthly statements to Thomas regarding the account, and he never disputed any

12  of those statements.  *Id*. at 28-29.  Eventually, Thomas stopped making payments and

13  never paid off the account in full.  *Id*. at 29, 67-68.

14      When Thomas stopped paying, the account was charged-off by Bank of America

15  on April 30, 2009 and sold to PRA on November 23, 2009.  (Woodard Decl. ¶¶ 3-4;

16  ECF No. 23).  Bank of America provided PRA with copies of account statements,

17  checks reflecting payments, and an "Affidavit of Sale and Certification of Debt" stating

18  that the unpaid balance on the account at the time of charge off was $8,536.76.  *Id*. ¶¶

19  4-5.

20      On December 9, 2009, PRA sent a letter to Thomas informing him that PRA had

21  purchased the account from Bank of America and notifying him pursuant to § 1692g

22  of the FDCPA of his right to dispute the debt.  *Id*. at ¶ 9.  Thomas does not dispute that

23  he received the December 9, 2009 letter, and admitted he never sent a dispute to PRA

24  regarding the account.  (Thomas Dep. at 72-74; ECF No. 25).  PRA sent additional

25  collection letters to Thomas on April 6, 2010, July 22, 2010, and August 23, 2010.

26  (Woodard Decl. ¶¶ 10-12; ECF No. 23).  PRA then referred the account to CIR Law

27  Offices ("CIR").  *Id*. ¶ 16.

28

---

[1] PRA's motion for oral argument is denied.  (ECF No. 34).

CIR filed a complaint on behalf of PRA against Thomas on June 9, 2011 in San Diego County Superior Court ("State Court Complaint").  (First Am. Compl., Ex. A; ECF No. 16 at 9).  The State Court Complaint was drafted on a form approved by the Judicial Council of California, which contains boxes that a plaintiff can check or leave blank.  *Id*.  The State Court Complaint asserted causes of action for "Common Counts."  *Id*. at 11.  Based upon the boxes that are checked, the "Common Counts" causes of action state:

> Plaintiff ... Portfolio Recovery Associates, LLC alleges that defendant ... Allen L. Thomas became indebted to plaintiff ... within the last four years ... on an open book account for money due.... [and] within the last ... four years ... for goods, wares, and merchandise sold and delivered to defendant and for which defendant promised to pay plaintiff ... the sum of $8,536.76....

*Id*.  Two of the unchecked boxes contain a dot in the middle of the box; the text beside those two boxes states: "an account was stated in writing by and between plaintiff and defendant in which it was agreed that defendant was indebted to plaintiff," and "money [was] lent by plaintiff to defendant at defendant's request."  *Id*.

On April 12, 2012, PRA filed a first amended complaint in the state court action. (Mitchell Decl. ¶ 3; ECF No. 22).

On May 16, 2012, Thomas initiated this action by filing a Complaint alleging FDCPA and Rosenthal Act claims in this Court.  (ECF No. 1).

On July 30, 2012, PRA filed a Request for Dismissal with the state court, which stated that PRA requests the dismissal without prejudice of the following two causes of action: "For money lent by plaintiff to defendant at defendant's request; ... For goods, wares, and merchandise sold and delivered to defendant and for which defendant promised to pay plaintiff."  (Mitchell Decl., Ex. C; ECF No. 22 at 32).

On August 1 and August 2, 2012, the state court action went to trial on only one cause of action: account stated.  (State Court Trans. at 12-13; ECF No. 21-2).

On August 29, 2012, the state court issued a "Statement of Intended Decision," which stated:

> Based upon all the evidence, the court finds that [PRA] has proved

that the account was stated with the May 2009 statement.... The May 2009 periodic statement, Exh. #6, states that the New Balance Total is '$0.00. At the first trial discussion of this document it was spoken of as a charge-off document.... No evidence was received in this case regarding the appearance of, or details regarding, 'charge-off documents.' [A]s the case progressed, it became clear that Exh. # 6 was something significantly different than a 'charge-off document.' The evidence is that Exh. # 6 is a credit card billing statement a copy of which was mailed to the defendant and was not disputed. This fits the definition of an account stated. The unusual difference is that the account stated sets out zero as the amount owing. This raised a number of questions in the mind of this judge, but there was no evidence received that would answer them. What the court is left with is evidence of an account stated in which the account stated balance is zero.

(ECF No. 19-2 at 27).

On October 5, 2012, the state court issued a judgment for Thomas and against PRA "because the evidence produced by [PRA] has established that the account stated balance is zero, therefore no amount is owing to [PRA]." *Id*. at 30.

On December 17, 2012, Thomas filed the First Amended Complaint in this Court. (ECF No. 16). The First Amended Complaint alleges:

In the ... June 9, 2011 State Court Complaint ... PRA alleged that PRA furnished 'purchases and/or cash advances' to Mr. Thomas on a credit card account issued by PRA, and that PRA was entitled to an award of attorney's fees....

In fact, PRA did not ever furnish 'purchases and/or cash advances' to Mr. Thomas on any credit card, nor did PRA issue any credit card to Mr. Thomas, and PRA had no legal basis to request attorney's fees....

PRA did not list any creditor other than PRA in the ... State Court Complaint, and by doing so PRA represented that PRA was in fact the 'original creditor,' or the party issuing credit, to Mr. Thomas....

The 'least sophisticated debtor' would in fact be confused or mislead as to the identity of the 'original creditor' on the account alleged by PRA in the ... State Court Complaint....

In the ... State Court Complaint, PRA also claimed a right to recover $8,536.76 under a theory of Money Lent....

Neither PRA nor any predecessor of PRA lent money to Mr. Thomas in this amount....

Furthermore, as there was an Account Stated formed on the account at issue in the amount of $0.00 that discharged any prior obligation, the true amount due for a claim of Money Lent was $0.00....

In the ... State Court Complaint, PRA also claimed a right to recover $8,536.76 under a theory of Goods, Wares and Merchandise....

Neither PRA nor any predecessor of PRA provided goods, wares or merchandise valued at this amount to Mr. Thomas without being paid....

Furthermore, as there was an Account Stated formed on the account at issue in the amount of $0.00 that discharged any prior obligation, the true amount due for a claim of Money Lent was $0.00....

In the ... State Court Complaint, PRA also claimed a right to recover $8,536.76 under a theory of Account Stated....

Mr. Thomas never entered into an account stated with PRA....

The true amount of the Account Stated at issue was $0.00, and was not $8,536.76.

*Id.* ¶¶ 18-30. In the First Amended Complaint, Thomas alleges that PRA violated the FDCPA and the Rosenthal Act. Thomas seeks actual damages, an award of statutory damages of $1,000 pursuant to the FDCPA and the Rosenthal Act, and attorney's fees and costs.

## III.   Contentions of the Parties

Thomas requests that the Court enter summary judgment in Thomas' favor on the question of liability under both the FDCPA and the Rosenthal Act. Thomas contends that he has met his burden of demonstrating that PRA made false representations in an attempt to collect a debt, in violation of 15 U.S.C. § 1692e, and PRA attempted to collect an amount not authorized by law or agreement, in violation of 15 U.S.C. § 1692f(1). Thomas contends that, in the State Court Complaint, PRA made three misrepresentations in PRA's attempt to collect a debt from Thomas: (1) "PRA misrepresented that [it was] the original creditor for the account at issue, and failed to disclose the true original creditor"; (2) "PRA misrepresented the amount recoverable under theories of Money Lent and Goods, Wares and Merchandise"; and (3) "PRA misrepresented the amount due under all of their claims." (ECF No. 19-1 at 15, 16, 20). Thomas contends that PRA has failed to established a bona fide error defense to any of Thomas' claims.

PRA requests that the Court grant summary judgment in favor of PRA as to Thomas' claims. PRA contends that the failure to name the original creditor in the State Court Complaint is not misleading or material because "the record shows that Thomas

1    was well aware of his Account with [Bank of America]" and "[t]he collection letters

2    sent by PRA identified [Bank of America] as the original creditor and informed Thomas

3    that PRA had purchased the Account."  (ECF No. 21-1 at 7).  PRA contends that the

4    State Court Complaint did not allege causes of action for account stated and money lent

5    because those allegations were next to boxes marked with a dot rather than a check.

6    PRA contends that Thomas' "failure to dispute the Account in response to the letter sent

7    by PRA pursuant to section 1692g of the FDCPA means he is barred from suing PRA

8    on the grounds that the debt is invalid."  *Id.*  PRA contends that it has satisfied the

9    elements of the bona fide error defense.

10   **IV.   Standard of Review**

11        "A party may move for summary judgment, identifying each claim or defense–or

12   the part of each claim or defense–on which summary judgment is sought.  The court

13   shall grant summary judgment if the movant shows that there is no genuine dispute as

14   to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R.

15   Civ. P. 56(a).  A material fact is one that is relevant to an element of a claim or defense

16   and whose existence might affect the outcome of the suit.  *See Matsushita Elec. Indus.*

17   *Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986).  The materiality of a fact is

18   determined by the substantive law governing the claim or defense.  *See Anderson v.*

19   *Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317,

20   322 (1986).

21        The moving party has the initial burden of demonstrating that summary judgment

22   is proper.  *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 152 (1970).  The burden then

23   shifts to the opposing party to provide admissible evidence beyond the pleadings to

24   show that summary judgment is not appropriate.  *See Celotex*, 477 U.S. at 322, 324.

25   The opposing party's evidence is to be believed, and all justifiable inferences are to be

26   drawn in her favor.  *See Anderson*, 477 U.S. at 256.  To avoid summary judgment, the

27   opposing party cannot rest solely on conclusory allegations of fact or law.  *See Berg v.*

28   *Kincheloe*, 794 F.2d 457, 459 (9th Cir. 1986).  Instead, the nonmovant must designate

1   which specific facts show that there is a genuine issue for trial. *See Anderson*, 477 U.S.
2   at 256.

3   **V.    Discussion**

4       "Seeking somewhat to level the playing field between debtors and debt
5   collectors, the FDCPA prohibits debt collectors from making false or misleading
6   representations and from engaging in various abusive and unfair practices." *Donohue*
7   *v. Quick Collect, Inc.*, 592 F.3d 1027, 1030 (9th Cir. 2010) (quotation omitted). "The
8   FDCPA imposes strict liability on creditors, including liability for violations that are
9   not knowing or intentional." *McCollough v. Johnson, Rodenburg & Lauinger, LLC*,
10  637 F.3d 939, 952 (9th Cir. 2011) (quotation omitted). "In this circuit, a debt
11  collector's liability under § 1692e of the FDCPA is an issue of law." *Gonzales v. Arrow*
12  *Fin. Servs., LLC*, 660 F.3d 1055, 1061 (9th Cir. 2011) (citation omitted).

13      In the First Amended Complaint, Thomas alleges that PRA violated the FDCPA,
14  15 U.S.C. § 1692e, prohibiting the "use [of] any false, deceptive, or misleading
15  representation or means in connection with the collection of any debt"; § 1692e(2),
16  prohibiting the "false representation of ... the character, amount, or legal status of any
17  debt"; § 1692e(5), prohibiting the "threat to take any action that cannot legally be taken
18  or that is not intended to be taken"; § 1692e(10), prohibiting the "use of any false
19  representation or deceptive means to collect or attempt to collect any debt"; and §
20  1692f(1), prohibiting the "collection of any amount ... unless such amount is expressly
21  authorized by the agreement creating the debt or permitted by law."

22      "Whether conduct violates §§ 1692e or 1692f requires an objective analysis that
23  takes into account whether the least sophisticated debtor would likely be misled by a
24  communication." *Donohue*, 592 F.3d at 1030 (quotation omitted). The "objective
25  'least sophisticated debtor' standard ... ensures that the FDCPA protects all consumers,
26  the gullible as well as the shrewd, ... the ignorant, the unthinking, and the credulous."
27  *McCollough*, 637 F.3d at 952 (quotation omitted). "The 'least sophisticated debtor'
28  standard is lower than simply examining whether particular language would deceive or

mislead a reasonable debtor.  The standard is designed to protect consumers of below average sophistication or intelligence, or those who are uninformed or naive, particularly when those individuals are targeted by debt collectors." *Gonzales*, 660 F.3d at 1061-62 (quotations omitted).  "At the same time, the standard preserves a quotient of reasonableness and presumes a basic level of understanding and willingness to read with care.  The FDCPA does not subject debt collectors to liability for bizarre, idiosyncratic, or peculiar misinterpretations." *Id*. at 1062 (quotations omitted). "[F]alse but non-material representations are not likely to mislead the least sophisticated consumer and therefore are not actionable under §§ 1692e or 1692f." *Donohue*, 592 F.3d at 1033.  "In assessing FDCPA liability, [the Court of Appeals for the Ninth Circuit is] not concerned with mere technical falsehoods that mislead no one, but instead with genuinely misleading statements that may frustrate a consumer's ability to intelligently choose his or her response." *Id*. at 1034.

It is undisputed that PRA is a "debt collector" and the debt at issue is a "debt" subject to the FDCPA. 15 U.S.C. §§ 1692a(5)-(6).  It is undisputed that the State Court Complaint at issue is subject to the requirements of the FDCPA.  *See Donohue*, 592 F.3d at 1031-32 ("[A] complaint served directly on a consumer to facilitate debt-collection efforts is a communication subject to the requirements of §§ 1692e and 1692f.").  The parties dispute whether the State Court Complaint contains a materially "false, deceptive, or misleading representation ... in connection with the collection of [the] debt." 15 U.S.C. § 1692e.

The State Court Complaint does not reference Bank of America, the original creditor. (ECF No. 16 at 9-11).  The State Court Complaint states that Thomas "became indebted to" PRA; Thomas "promised to pay" PRA; "an account was stated in writing by and between [PRA] and [Thomas] in which it was agreed that [Thomas] was indebted to [PRA]"; and "money [was] lent by [PRA] to [Thomas] at [Thomas]'s

1   request."[2]  *Id*. at 11.  Based upon the undisputed facts, the Court finds that the failure

2   to identify the true original creditor in the State Court Complaint, and the indication in

3   the State Court Complaint that PRA was the original creditor, constitute "false,

4   deceptive, or misleading representation[s] ... in connection with the collection of [the]

5   debt."  15 U.S.C. § 1692e.

6        Based upon the facts of this case as applied to the least-sophisticated-consumer

7   standard, the Court finds that PRA's statements and omissions in the State Court

8   Complaint are not "mere technical falsehoods that mislead no one, but instead [are]

9   genuinely misleading statements that may frustrate a consumer's ability to intelligently

10  choose his or her response."  *Donohue*, 592 F.3d at 1034; *see also Wallace v. Wash.*

11  *Mut. Bank, F.A.*, 683 F.3d 323, 327 (6th Cir. 2012) ("District courts have decided, and

12  we agree, that a[] false representation of the creditor's name may constitute a false

13  representation ... under Section 1692e," which could "cause[] confusion and delay in

14  trying to contact the proper party concerning payment ... and resolution of the

15  problem.") (quotation omitted).   Although PRA identified Bank of America in

16  collection letters sent December 9, 2009, April 6, 2010, July 22, 2010, and August 23,

17  2010 (Woodard Decl. ¶¶ 9-12, Exs. D-G; ECF No. 23), the 10-month delay between the

18  final collection letter and the filing of the State Court Complaint and the statements in

19  the State Court Complaint indicating that PRA was the original creditor render PRA's

20  false, deceptive, or misleading representations in the State Court Complaint material.

21  *See Heathman v. Portfolio Recovery Assocs., LLC*, No. 12-CV-515-IEG-RBB, 2013

22  _____

23     [2] The Court finds that the least sophisticated debtor could reasonably believe that
    PRA was asserting the causes of action marked by a box with a dot in the middle.  *See*
24  ECF No. 16 at 11; *cf. Gonzales*, 660 F.3d at 1062 ("[A] debt collection letter is
    deceptive where it can be reasonably read to have two or more different meanings, one
25  of which is inaccurate.") (quotation omitted).   The evidence indicates that PRA's
    counsel, who drafted and filed the State Court Complaint, believed that PRA was
26  asserting the causes of action marked by a box with a dot in the middle.  (Mitchell
    Decl., Ex. C, ECF No. 22 at 32 (PRA's Request for Dismissal of the "money lent" cause
27  of action—one of the two causes of action marked by a box with a dot); ECF No. 19-2
    at 8 (PRA's state court case management statement, stating that "this complaint
28  includes an ... account stated cause[] of action," which was marked by a box with a
    dot)).

WL 3746111, at *1, *4 (S.D. Cal. July 15, 2013) (same, when prior collection letters naming the original creditor were sent over a year prior to the filing of the state court collection complaint which failed to name the original creditor); *cf. Tourgeman v. Collins Fin. Servs., Inc.*, No. 08-CV-1392-CAB-NLS, 2012 WL 3731807, at *7 (S.D. Cal. Aug. 29, 2012) (holding that failure to identify the original creditor in the state court collection complaint was not materially misleading because, *inter alia*, the contract attached to the state court complaint identified the original creditor).  Based upon the undisputed facts, the Court finds that PRA's false, deceptive, and/or misleading representations are material.

PRA contends that the "bona fide error" affirmative defense applies in this case. (ECF No. 21-1 at 23-25).  The bona fide error defense in the FDCPA provides:

> A debt collector may not be held liable in any action brought under this subchapter if the debt collector shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error.

15 U.S.C. § 1692k(c); *see also Reichert v. Nat'l Credit Sys., Inc.*, 531 F.3d 1002, 1005 (9th Cir. 2008) ("The FDCPA makes debt collectors liable for violations that are not knowing or intentional.  It provides a narrow exception to strict liability, however, for bona fide errors.").  The bona fide error defense is an affirmative defense, for which the debt collector has the burden of proof.  *See Reichert*, 531 F.3d at 1006.  "A debt collector is not entitled under the FDCPA to sit back and wait until a creditor makes a mistake and then institute procedures to prevent a recurrence.  To qualify for the bona fide error defense under the FDCPA, the debt collector has an affirmative obligation to maintain procedures designed to avoid discoverable errors. ...   The procedures themselves must be explained, along with the manner in which they were adapted to avoid the error."  *Id*. at 1007.

PRA states that it "employs significant procedures that are reasonably adapted to prevent it from filing suit against an individual who does not owe the debt."  (ECF No. 21-1 at 24).  However, PRA fails to identify any procedure PRA maintains which

is reasonably adapted to avoid the specific error at issue: failing to identify the original creditor and falsely indicating that PRA is the original creditor in a collection complaint.  The Court finds that PRA has failed to create a genuine issue of material fact regarding the applicability of the bone fide error defense.[3]

The Court finds that PRA's failure to identify the original creditor in the State Court Complaint, and the indication that PRA was the original creditor, constitute a violation of the FDCPA, 15 U.S.C. § 1692e.  For the same reasons, the Court finds that Thomas has established that PRA violated the Rosenthal Act.[4]  *See Riggs v. Prober & Raphael*, 681 F.3d 1097, 1100 (9th Cir. 2012) ("The Rosenthal Act mimics or incorporates by reference the FDCPA's requirements, including [§ 1692e], and makes available the FDCPA's remedies for violations.  Thus, ... whether a ... notice violates the Rosenthal Act turns on whether it violates the FDCPA.") (citing Cal. Civ. Code § 1788.17).  The Court grants Thomas' Motion for Summary Judgment and denies PRA's Motion for Summary Judgment as to PRA's liability under the FDCPA, 15 U.S.C. § 1692e, and the Rosenthal Act.

//

//

//

//

//

---

[3]  PRA also contends that "[e]ach of [Thomas'] claims must fail ..., because Thomas never disputed the debt in response to PRA's December 9, 2009 letter which informed him that he had the right to dispute the debt or any portion of it."  (ECF No. 21-1 at 20 (citing, *inter alia*, *Palmer v. I.C. Sys., Inc.*, 2005 WL 3001877, at *5 (N.D. Cal. Nov. 8, 2005) ("[W]here, as here, it is undisputed that the consumer never contacted the collector to contest the debt before the final collection attempt, plaintiff cannot assert a cause of action under the FDCPA based solely on the debt collector's attempt to collect an invalid debt.")).  Thomas' claim concerning PRA's failure to accurately disclose the identity of the original creditor in the State Court Complaint does not constitute "a cause of action under the FDCPA based solely on the debt collector's attempt to collect an invalid debt."  *Palmer*, 2005 WL 3001877, at *5.

[4]  The Court does not reach Thomas' alternative arguments that PRA is liable under the FDCPA and the Rosenthal Act due to alleged misrepresentations concerning the amount recoverable or due.  (ECF No. 19-1 at 16-22).

## VI.   Conclusion

IT IS HEREBY ORDERED that Thomas' Motion for Summary Judgment (ECF No. 19) is GRANTED, and PRA's Motion for Summary Judgment (ECF No. 21) is DENIED, as discussed above.  No later than thirty (30) days from the date of this Order, the parties shall file a joint status report identifying the remaining issues in this case.

DATED:  August 12, 2013

*William Q. Hayes*

**WILLIAM Q. HAYES**
United States District Judge

- 12 -

12cv1188-WQH-WMc